# Highland Avenue & Belt Railroad Company v. Thornton.

*Petition in Pending Suit by a Third Person as Creditor.*

1. *Receiver; authority to contract debts.*—A receiver who is appointed in a suit pending between the landlord and the lessee of a hotel, and is given "authority to conduct and run the hotel, and for that purpose to make such purchases as may be necessary," no provisions being made by the court for him to raise money, has implied authority to purchase necessary supplies on credit; and the debt, being properly proved under order of the court, constitutes a proper charge, first, on the income of the property, and then on the estate itself.

2. *Same; when third person may intervene by petition in pending suit.* A person who has sold goods on credit to a receiver, within the scope of his authority to purchase, may intervene by petition in the pending suit at any time before the receiver is finally discharged, and ask the allowance of his claim as a charge on the fund or property in the possession or control of the court; and the fact that the possession of the property has, by consent of the parties to the suit, been delivered to the complainant in the cause, does not affect the right of the creditor to intervene.

3. *Same; rights of creditors who sold on credit to receiver.*—A receiver who is appointed and authorized to "run a hotel and for that purpose to make such purchases as may be necessary," is vested with discretion with respect as to what is necessary to carry on the hotel business, and third parties or strangers dealing with him may, while acting in good faith, rely upon the presumption that his acts are *prima facie* within the competency of his office, and that he is exercising his discretion in accordance with the terms of the order appointing him; and creditors of such receiver, who sold him supplies that were necessary to carry on the hotel business on a credit, can enforce their claim against the estate in his hands, unless they knew, or were put upon notice, that his acts, though upon their face within his official capacity, were in reality in violation of his trust; and this is true even though the receiver had funds when he purchased the goods on a credit, or failed to pay for them when he was afterwards in funds.

APPEAL from the Chancery Court of Jefferson.

Heard before the Hon. THOMAS COBBS.

On the 26th day of July, 1890, the Highland Avenue & Belt Railroad Company filed a bill in the chancery court of Jefferson county against M. Clifford, wherein it

was alleged, among other things, that said company had, on the 15th day of September, 1889, leased to said Clifford a certain hotel, known as The Lake View Hotel, and the furniture therein, until the 15th day of September, 1890, for a certain stipulated rent; that said Clifford had failed to pay a large part of the rent, and had thereby forfeited his right to remain in possession of the property under the terms of the lease, but that he had refused to surrender possession of the same on demand being made; that there was danger of Clifford's removing personal property from the hotel; that it was not practicable to sue for and recover the personal property in a court of law, and that defendant was insolvent. It was also alleged in the bill that the hotel was occupied at that time, by a large number of persons as permanent guests, and that to close said hotel would seriously injure the good will and business of the hotel and would greatly embarrass the complainant in securing a tenant therefor. In accordance with the prayer of the bill, on the filing thereof, a receiver was appointed, and such receiver was authorized to "run and conduct the hotel, and for that purpose to make such purchases as might be necessary." On the 22d day of January, 1891, appellee, T. F. Thornton, filed a petition in said cause alleging, among other things, that the receiver so appointed, in conducting and operating the hotel under said authority, had purchased from him on a credit groceries for use in the management and operation of said hotel, and which were so used, to the amount of five hundred and twenty-one and 34-100 dollars ($521.34); that the receiver had failed to pay him for the same, because the expenditures made by receiver in running the hotel had largely exceeded the receipts of the business, and that the receiver had no funds with which to pay his said demand; that the amount so due to petitioner was for a necessary expense incurred by the receiver in the preservation of complainant's property, and that the said hotel had, in the month of December, 1889, by consent of all the parties to the cause, been restored to the possession of complainant. The prayer of the petition was that the said Highland Avenue & Belt Railroad Company might be required to pay the sum so due to petitioner, and on its failing to do so, within a time to be appointed, that the hotel property might be

sold for the said debt. The said Highland Avenue & Belt Railroad Company interposed a demurrer to the petition, which on the hearing was sustained, and the petitioner declining to amend its petition, the same was dismissed by decree of the court. On appeal, taken by the said Thornton, this decree was reversed by the Supreme Court, and the cause remanded for further proceedings therein. (*Thornton v. H. A. & B. R. R. Co.*, 94 Ala. 353.) Petitions similar to that of Thornton were filed by Phillips & Company, on the 5th day of January, 1891, and by Ozanne & Cody on the 29th day of June, 1891. On the cause being remanded, the Highland Avenue & Belt Railroad Company filed answers to the several petitions mentioned, denying the material allegations thereof. Thereupon, on the 14th day of June, 1892, the chancery court made a decree referring it to the register, to ascertain and report as to whether the allegations contained in the petitions were true. The register, after taking a great deal of testimony which is set out in the record, reported in substance that the allegations of the several petitions were true. The Higland Avenue & Belt Railroad Company filed exceptions to this report, but the exceptions were overruled, and a decree was rendered, providing, in substance, that unless the sums due to the several petitioners were paid within a certain time, the Lake View Hotel property should be sold for the satisfaction of petitioners' several demands. This appeal is taken from that decree, and the same is here assigned as error.

ALEX. T. LONDON, for appellant.—A receiver can not charge the property with debts of his own creation, without notice to the person in interest, unless it be shown that such debts were not only necessary, but essential to the performance of his duties; nor will such debts be a charge upon the property where the necessity for their creation arises upon the misfeasance or malfeasance of the creator.—*Meyer v. Johnston*, 53 Ala. 237.

CABANISS & WEAKLEY, *contra*.—1. The receiver in this case had it in his power to purchase necessary supplies for the hotel on credit, in the exercise of the discretion vested in him by the appointment; and the exercise of this discretion did not depend upon whether or not he

had money in his hands to make such purchases.— *Thornton v. H. A. & B. R. R. Co.*, 94 Ala. 353.

2. If a sale to a receiver is of property which he was authorized to purchase, the party making the sale will be protected and can enforce his claim against the estate, even though the receiver has acted in bad faith in making the purchase, if the sale was made without the seller's having knowledge or notice of the breach of trust.— *Vanderbilt v. Central R. R. Co.*, 43 N. J. Eq. 669.

McCLELLAN, J.—On a former appeal in this case it was held that the receiver, being appointed in a suit pending between the landlord and the lessee of a hotel, and authorized "to conduct and run the hotel, and for that purpose to make such purchases as may be necessary," and no provision being made for him to raise money, had the implied authority to purchase necessary supplies to carry on the hotel business on credit; and that debts thus incurred by the receiver constituted charges, first on the income of the property, and then upon the *corpus*.— *Thornton v. Highland Avenue & Belt R. R. Co.*, 94 Ala. 353.

That construction was put upon the order of the chancellor upon the consideration that "when the order was made the court knew its own officer (the receiver) had no money, and it made no provision for raising any." How, on these facts, the court asks, "was the receiver to perform his duty, unless he purchased on a credit?" And concludes: "We are of opinion that the order gave the power and the discretion to the receiver to make purchases, if necessary, upon a credit." It is now insisted for the appellant that this construction of the order was erroneous for that it is now shown, the claim is, that the considerations upon which the construction was arrived at do not and did not exist; that, in other words, the chancery court did not know the receiver had no money, because the fact was that he did have funds to carry on the hotel; and, therefore, it is said, that court could not have intended to have authorized purchases on credit, and there is no basis for supplying such authority by implication. We do not think this position can be sustained. The order must be considered from the point of view held by the chancellor when it was made, and not with reference to unforeseen subsequent develop-

ments.   The purpose to be subserved by the appointment
of the receiver was that the hotel, which was then being
conducted by the lessee and in which were being enter-
tained a large number of permanent as distinguished
from transient guests, should not be closed, but should
be kept open for the continued accommodation of its
patrons.   The bill alleged that the hotel was occupied by
a number of persons as guests who then had no place of
residence or abode elsewhere, and that to close the estab-
lishment "would seriously injure the good will and busi-
ness thereof and greatly embarrass orator in securing a
tenant therefor."   The receiver upon taking possession,
would have had, in fact did have, the hotel building and
furniture, and this large number of guests upon his
hands with no provisions for their sustenance and no
money to purchase such provisions.   The chancellor ju-
dicially knew, as of common knowledge, that hotels at
this day and especially in cities are dependent for supplies
upon purchases made from day to day and for each day.
He was advised by the bill of the fact that the guests of
this hotel were not merely stopping there for a day or a
meal, but that they were residents there for indefinite pe-
riods of time.   And he knew that such guests did not pay
their bills daily, but probably by the month. The appoint-
ment was made on July 26th.   Whether the guests had
paid the defendant in advance for that month, or were
to pay at the end of the month, it was certain that sev-
eral days must elapse before the receiver could receive a
farthing from the business he was ordered to carry on,
and the conduct of which required the outlay of a con-
siderable sum of money in the purchase of supplies for
each of those days.   There was but one possible way for
the receiver to comply with the order. to carry on the
hotel business without that break or hindrance which
the complainant was so anxious to avoid ; and that was
by purchasing supplies on credit.   And when, as this
court said on the former appeal, the chancery court or-
dered him to make purchases, knowing as it did that he
had no money, and would receive none from the business
for some time, it must have intended that the necessary
purchases should be made on credit.   And this situation,
as it presented itself prospectively to the chancellor, was
the situation which really transpired.   Purchases were
necessary from the very first moment the receiver took

possession of the hotel when there had not been the possibility of his receiving or having any money at all. And upon these considerations, which have not indeed been changed since the case was here before, we reaffirm the conclusion then reached; that the order of the chancellor authorized the receiver to make the purchases necessary to carrying the hotel on credit.

It may be conceded that it was the receiver's duty to pay for supplies as he purchased them when he had funds belonging to the trust in his hands; and that, coming into funds after purchasing on credit, it was then his duty to pay the bills thus made. But it does not follow, if having funds he nevertheless purchased on credit, or having made bills he fails to pay them when he is afterwards in funds, that persons to whom he thus becomes indebted have no recourse against the estate in his hands. Primarily, such persons are charged with such knowledge of the receiver's powers as is imparted by the order of his appointment and other orders in the premises made from time to time by the court, and they may deal with him on that basis, without responsibility, or liability to loss, so long as those powers are not exceeded, unless they know as matter of extraneous fact, or are put upon notice, that his acts, though upon their face within his official competency, are in reality in violation of his trusts. Here, for illustration, the receiver was authorized to make such purchases as should be necessary to carry on the hotel business. If he made purchases of supplies which were suitable to the uses the order directed him to subserve, and instead of devoting them to those uses, he converted them to his own use, or if they were not in fact necessary to the carrying on of the business in that its requirements had already been met, the seller, unless he had knowledge or notice of the perversion of the receiver's authority, would not be prejudiced thereby. The receiver in such case has some discretion, and necessarily so, in respect of what is necessary to carry on the business, and third persons dealing with him may, so long as they act in good faith, rely upon the presumption that as his acts are *prima facie* within the competency of his office, his discretion is being properly exercised. The duty of determining what quantities of suitable supplies the receiver shall purchase can not be put at their peril on strangers: that

duty and power is with him, and strangers may assume, till they know or ought to know to the contrary, that he is discharging and exercising it in accordance with the terms of the authorization under which he purports to be acting. And so in respect of purchases on credit: strangers dealing with him are held to know only that he has authority to purchase certain classes of goods on credit. They may know, too, that it is his duty to pay cash for goods of these classes whenever he is in funds. But they do not know, and they have no means of ascertaining with any certainty whether at a given time the receiver in cases like this has any money or not; and it would not only be unreasonable and impracticable to require them to know that the receiver had no funds before selling to him on credit, or, not knowing, to act at their peril; but to so hold would seriously embarrass the receiver's administration of the business committed to him. Here also must be indulged a *prima facie* presumption that the officer is properly discharging his duty, and that presumption will protect persons dealing with him so long as it is not removed as to them by knowledge or notice that he is failing in duty and violating his trusts. Whether the receiver in this case had funds in hand or not when he made these purchases from the present petitioners on credit is wholly immaterial, therefore, unless it were shown, which it is not, that they knew or had notice of the fact.

And upon these considerations, the decree of the chancery court is affirmed.